**Steven Ray GUILFOYLE, a minor, By and Through his mother and next friend, Dorothy Jean WILD, & Dorothy Jean Wild, individually, Plaintiffs-Appellees Cross-Appellants,**

v.

**MISSOURI, KANSAS, and TEXAS RAILROAD COMPANY, a Delaware corporation, Defendant-Appellant Cross-Appellee.**

Nos. 85–2058, 85–2139.

United States Court of Appeals,
Tenth Circuit.

Feb. 27, 1987.

---

Steven R. Hickman of Frasier & Frasier, Tulsa, Okl., for plaintiffs-appellees cross-appellants.

A. Camp Bonds, Jr., of Bonds, Matthews, Bonds, Hayes & Matthews, Muskogee, Okl., for defendant-appellant cross-appellee.

Before HOLLOWAY, Chief Judge, and BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Steven Ray Guilfoyle by and through his mother, Dorothy Jean Wilder, brought this diversity action against the Missouri, Kansas, and Texas Railroad Company for personal injuries suffered by Guilfoyle while "joy riding" on one of the defendant's trains. Wilder also sought recovery on her own behalf for related medical expenses. A jury found Guilfoyle fifty percent negligent and the railroad fifty percent negligent and assessed damages at $148,700 for Guilfoyle alone. It gave his mother nothing. The district court then entered judgment for Guilfoyle in the amount of $74,-350, plus interest. The railroad appealed the district court's order denying its motion for judgment notwithstanding the verdict, and plaintiffs filed a cross-appeal challenging the damages award as inadequate. We find that the railroad was entitled to judgment n.o.v., and we therefore reverse.

The accident occurred after Guilfoyle and two of his friends went onto the railroad's property for the purpose of climbing and playing on a freight train which had stopped temporarily on tracks near the boys' homes. The boys remained on the train after it began moving, and then jumped off one at a time. Guilfoyle slipped on the gravel as he was jumping off, and his legs apparently came underneath the train's wheels. Both legs were severely crushed between the knee and ankle, neces-

sitating a double amputation. Guilfoyle was fourteen years and eleven months old at the time of the accident, and in the eighth grade.

The standard of review in ruling on a motion for directed verdict or judgment n.o.v. is the same in the district court and on appeal. That standard requires us to determine whether, viewing the evidence in the light most favorable to the nonmoving party, the evidence and the inferences to be drawn from it are so clear that reasonable minds could not differ on the conclusion. *Motive Parts Warehouse v. Facet Enterprises*, 774 F.2d 380, 385 (10th Cir.1985).

■ The railroad argues that the district court erred in permitting the jury to find the railroad liable under the doctrine of attractive nuisance. This doctrine imposes a duty of care on landowners to prevent serious harm to trespassing children who, because of their youth and inexperience, are unable to appreciate the dangers created by certain artificial conditions. *See Ramage Mining Co. v. Thomas*, 172 Okla. 24, 27, 44 P.2d 19, 23 (1935); *Restatement (Second) of Torts* § 339 (1965). In *Keck v. Woodring*, 201 Okla. 665, 208 P.2d 1133 (1948), a case involving a boy fourteen years and ten months old who was injured while playing on a dirt loading machine, the Oklahoma Supreme Court said:

> "Whether the child was of an age and capacity to understand and avoid danger is usually a question for the jury, but it may be stated as a settled rule in this state that after the age of fourteen all minors are prima facie presumed to be capable of the exercise of judgment and discretion. Plaintiff being over the age of fourteen, and there being no evidence of lack of capacity, but, on the contrary, there being evidence that plaintiff was of advanced intelligence, the trial court should have held as a matter of law that the rule of attractive nuisance could not be invoked."

*Id.* at 1136. *See also Sidwell v. McVay*, 282 P.2d 756, 758 (Okla.1955) (quoting *Keck* with approval).

■ While we do not read *Keck* as absolutely barring application of the attractive nuisance doctrine to minors over the age of fourteen, we think the Oklahoma rule at least imposes a burden on Guilfoyle to produce evidence that at the time of the accident he lacked the mental capacity ordinarily found in a fourteen-year-and-eleven-month-old boy. The only evidence to that effect appearing in the record is Guilfoyle's acknowledgement on cross-examination that he was in the eighth grade, "behind one year" in school, with grades in the "C" range. R. VI, 264. Arguably pointing toward Guilfoyle's having normal mental capacity was his admission that he had previously had some experience driving a farm tractor and riding combines and hay bailers, which made him aware that such machinery could be dangerous. R. VI, 264–65, 276.

In *Hashtani v. Duke Power Co.*, 578 F.2d 542 (4th Cir.1978), the court, applying North Carolina law, denied recovery under the attractive nuisance doctrine to a fourteen-year-and-two-month-old plaintiff who was injured while climbing on a tower supporting high-voltage electric transmission lines. North Carolina, like Oklahoma, limits application of the doctrine to children younger than fourteen, absent some showing of a lack of ordinary mental development. *Id.* at 544. That court held that evidence the plaintiff was a year behind in school and his grades were in the "C" range, combined with the equivocal testimony of the plaintiff's psychiatrist, was insufficient to support a finding of "lack of mental development," and that the defendant was entitled to a directed verdict. *Id.* at 544–46. *See also Moseley v. Kansas City*, 170 Kan. 585, 590, 228 P.2d 699, 704 (1951) ("The fact that a child, older than the normal age to which the doctrine is applied, has been backward in his work at school is not deemed sufficient to include the child within the doctrine, unless there is a showing that the backwardness in his studies is the result of mental impairment or deficiency."). In the absence of any evidence that Guilfoyle's scholastic standing was due to below-normal mental capacity, we must conclude that the district court erred in permitting the jury to apply the attractive nuisance doctrine.

■ Under Oklahoma law, Guilfoyle clearly was a trespasser. *See Chicago,*

*R.I. & P. Railway Co. v. Bailey,* 157 Okla. 265, 11 P.2d 763 (1932). The only duty a railroad owes to trespassers if the attractive nuisance doctrine does not apply is to refrain from willfully or wantonly injuring them. *Id.* at 266, 11 P.2d at 765; *cf. Ramage,* 172 Okla. at 26–27, 44 P.2d at 22–23. Guilfoyle's requested instruction, which was given by the district court, defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to injure, or which if not intentional, shows an utter indifference to or conscious disregard for the safety of others." R. VI, 481–82. There is no evidence in the record from which a reasonable jury could conclude that the railroad or its employees acted in a willful or wanton manner. The railroad was therefore entitled to judgment notwithstanding the verdict.

REVERSED and REMANDED for entry of judgment in favor of the defendant.

HOLLOWAY, Chief Judge, dissenting:

The trial judge heard the testimony about the child's school difficulty and observed his demeanor and understanding on the stand. He determined to submit the issue to the jury under Oklahoma law concerning the attractive nuisance doctrine in these circumstances and I would not reverse his ruling.